1              IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MASSACHUSETTS
2

3    UNITED STATES OF AMERICA,          )
                                        )
4              Plaintiff                )
                                        )
5          -VS-                         )  Criminal No. 12-10188-PBS
                                        )  Pages 1 - 19
6    QIANG HU, also known as Johnson    )
     Hu,                                )
7                                       )
               Defendant                )
8

9                **RULE 11 HEARING (REDACTED)**

10

               BEFORE THE HONORABLE PATTI B. SARIS
11             UNITED STATES CHIEF DISTRICT JUDGE

12

13   A P P E A R A N C E S:

14       B. STEPHANIE SIEGMANN, ESQ., Assistant United States
     Attorney, Office of the United States Attorney,
15   1 Courthouse Way, Room 9200, Boston, Massachusetts, 02210,
     for the Plaintiff.
16
         LEONARD E. MILLIGAN, III, ESQ. and JIN-HO KING, ESQ.,
17   Milligan Coughlin, LLC, 7 Liberty Square, 2nd Floor, Boston,
     Massachusetts, 02109, for the Defendant.
18
     ALSO PRESENT:  Anna Yee, Mandarin Interpreter.
19
                                    United States District Court
20                                  1 Courthouse Way, Courtroom 19
                                    Boston, Massachusetts  02210
21                                  October 16, 2013, 2:15 p.m.

22

23               LEE A. MARZILLI
               OFFICIAL COURT REPORTER
24           United States District Court
             1 Courthouse Way, Room 7200
25             Boston, MA  02210
                 (617)345-6787

1                P R O C E E D I N G S

2          THE CLERK:  Court calls Criminal Action 12-10188,

3    United States have Qiang Hu.  Could counsel please identify

4    themselves.

5          MS. SIEGMANN:  Good afternoon, your Honor.  Stephanie

6    Siegmann for the United States.

7          MR. MILLIGAN:  And hello again, your Honor.  I'm

8    Leonard Milligan here with Attorney Jin-Ho King as well, both

9    on behalf of Johnson Hu.

10          (Interpreter duly sworn. )

11          THE INTERPRETER:  Good afternoon, your Honor.

12          THE COURT:  Good afternoon.  So, Mr. Milligan, why are

13    we here today?

14          MR. MILLIGAN:  Your Honor, this is a change of plea, a

15    Rule 11 hearing.

16    ███████████████████████████████████████████████

17    ███████████████████████████████████████████████████

18    ███████████████████████████████████████████████

19    ██████████████████████████████

20    ███████████████

21    ███████████████████████████████████████████████████

22    ████████████████████████████████████████████████

23    █████████████████████████

24    ███████████████████████████████████████████

25    ██████

1      █████████████████████

2      THE COURT:  All right, go ahead.

3      THE CLERK:  Could you please stand and raise your

4 right hand.

5      (Defendant duly sworn.)

6      THE CLERK:  Mr. Hu, you have previously pled not

7 guilty to an indictment charging you with Count 1, conspiracy

8 to commit export violations, all in violation of Title 50, USC,

9 Section 1705.  Do you now wish to change your plea?

10      THE DEFENDANT:  Yes.

11      THE CLERK:  How do you plead to Count 1, guilty or not

12 guilty?

13      THE DEFENDANT:  I admit that I am guilty.

14      THE COURT:  All right, thank you.  You may stay right

15 there.  It will be easier for your Interpreter, I think.

16      Sir, do you understand that you are now under oath,

17 and if you answer any of my questions falsely, your answers may

18 later be used against you in another prosecution for perjury or

19 making a false statement?

20      THE DEFENDANT:  Understood.

21      THE COURT:  What is your full name?

22      THE DEFENDANT:  Hu Qiang.

23      THE COURT:  Are you sometimes known as Johnson Hu?

24      THE DEFENDANT:  John Hu is the name that I use for the

25 English name.

1             THE COURT:  Okay.  How old are you?

2             THE DEFENDANT:  Forty-eight.

3             THE COURT:  How far did you go in school?

4             THE DEFENDANT:  I graduated with master degree from an

5    MBA program.

6             THE COURT:  Where?

7             THE DEFENDANT:  In Shanghai.  The program was

8    cosponsored by China and the foreign company, between the

9    government.

10            THE COURT:  I don't understand.

11            THE DEFENDANT:  It is collaboration between a Dutch

12   management school and an institution in China, and then they

13   have this cosponsorship which educate people in Shanghai.

14            THE COURT:  Do you speak English?

15            THE DEFENDANT:  I can speak but very simple ones.

16            THE COURT:  Did someone translate the indictment for

17   you from English to Chinese?  Did someone translate the

18   indictment for you into Chinese?

19            THE DEFENDANT:  Yes.

20            THE COURT:  Do you speak Mandarin?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Did someone translate the plea agreement

23   for you?

24            THE DEFENDANT:  Yes.

25            THE COURT:  And did you sign it?

1            THE DEFENDANT:  Yes.  I recent signed my name.

2            THE COURT:  Where are you a citizen of?

3            THE DEFENDANT:  China.

4            THE COURT:  Have you had an opportunity to speak to

5     someone from your country before you enter into these plea

6     agreements or the plea proceedings?

7            THE DEFENDANT:  What country?

8            THE COURT:  You have the right to speak to someone

9     from your country before you enter into a plea or before you go

10    to trial.  You have a right to discuss it with someone from

11    your country, as I understand it.  Have you had the chance to

12    do that?

13            (Discuss between Mr. King and the defendant.)

14            THE COURT:  Let me ask you this:  Have you notified

15    him of his right?

16            MS. SIEGMANN:  Initially when he was arrested, your

17    Honor, the consulate was notified.  That is the requirement,

18    and at that point there's a consulate notification that the

19    government did, and Mr. Milligan might have some more to

20    comment on that.

21            MR. MILLIGAN:  Earlier in the process, his American

22    relatives were in touch with the Chinese consulate, and through

23    them, we coordinated or declined to have their involvement in

24    this defense.

25            THE COURT:  Well, let me ask him now:  Do you want to

1  have any communications with the consulate?

2          THE DEFENDANT:  You're talking about the Chinese

3  consulate?

4          THE COURT:  Yes.

5          THE DEFENDANT:  I don't think it's necessary.

6          MS. SIEGMANN:  And, your Honor, just for the record,

7  he has communicated with his wife who is in China while being

8  incarcerated.

9          THE COURT:  Maybe.  It's just he has a right to

10  discuss -- as I understand it, under an international treaty,

11  he has the right to talk to someone from his country before he

12  decides what to do.  I just want to make sure he has been

13  informed of that and declines it.  So do you want to go forward

14  with these proceedings even though you haven't discussed it

15  with your consul?

16          (Discussion between Mr. King and the defendant.)

17          THE DEFENDANT:  I think so.

18          THE COURT:  You're sure?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Have you ever been treated for any mental

21  illness or addiction to narcotic drugs?

22          THE DEFENDANT:  No.

23          THE COURT:  Are you currently under the influence of

24  any drugs or medications or alcoholic beverages?

25          THE DEFENDANT:  No.

1        THE COURT:  Have you had an opportunity to talk with
2   your lawyer as much as you want to?
3        THE DEFENDANT:  Before today?
4        THE COURT:  Yes.
5        THE DEFENDANT:  Yes.
6        THE COURT:  Has he or have they in any way pressured
7   you into pleading guilty?
8        THE DEFENDANT:  No.
9        THE COURT:  Have they answered all your questions?
10       THE DEFENDANT:  Yes.
11       THE COURT:  Are you satisfied with their representation?
12       THE DEFENDANT:  Yes.  I'm very satisfied.
13       THE COURT:  Have you reviewed the plea agreement with
14   them?
15       THE INTERPRETER:  I'm sorry?
16       THE COURT:  Have you talked to them about the plea
17   agreement?
18       THE DEFENDANT:  I have talked to them.
19       THE COURT:  Do you understand that there is a waiver
20   of right to appeal and to bring collateral challenge in
21   Paragraph 7?
22       THE DEFENDANT:  I know that.
23       THE COURT:  And, among other things, you've agreed not
24   to file a direct appeal nor collaterally challenge any
25   imprisonment sentence of 46 months or less?

1          THE DEFENDANT:  I understand that.

2          THE COURT:  And let me just ask you, have you both had

3     a chance to review the waiver of appeal rights?

4          MR. MILLIGAN:  We have, your Honor.  

5

6

7

8

9

10

11

12

13

14

15

16

17

18          THE COURT:  So what I will do is, I will send this

19     case to the Probation Department, which will review the facts

20     of the case and your personal history and write a Presentence

21     Report.  Then they will recommend a Guideline range, which is

22     only advisory.  So I will calculate a Guideline range at a

23     sentencing hearing.  Your attorney and the government attorney

24     can object to that calculation if you think I've done it wrong,

25     and, in addition, your attorney and the government's attorney

1    can seek a departure or a variance from that Guideline range.

2    I will impose sentence, and then you can appeal the sentence to

3    the extent permitted by the plea agreement.  However, you

4    cannot withdraw your guilty plea at that point simply because

5    you disagree with the sentence.  Do you understand all that?

6              THE DEFENDANT:  Understood.

7              THE COURT:  I want to tell you about the very

8    important constitutional rights you would have if you went to

9    trial in this case.  First, you have a right to a jury trial.

10   The jury would be made up of twelve citizens chosen at random

11   from the community.  Before you could be convicted, the

12   government would have to prove that you're guilty beyond a

13   reasonable doubt, and all twelve jurors unanimously would have

14   to decide that you're guilty beyond a reasonable doubt before

15   you can be found guilty.  This is important.  The government

16   does not choose the jurors.  They're chosen at random on a

17   computer program from the people in Massachusetts.

18             In addition, you would have the right to confront the

19   government's witnesses, and you could introduce testimony on

20   your own behalf.  In addition, you'd have a right to your

21   attorneys throughout the trial.  The trial would be public.

22   You would not have to testify against yourself, but you could

23   testify if you wanted to.  Do you understand these are your

24   constitutional rights in this courtroom?

25             THE DEFENDANT:  I know.

1      THE COURT:  And knowing all these important

2  constitutional rights, which are, I would say, among the best

3  in the world, if not the best, do you still want to plead

4  guilty?

5      THE DEFENDANT:  I admit that I'm guilty.  I don't want

6  to change that.

7      THE COURT:  All right, now what I'm going to do is,

8  I'm going to ask the government to state the evidence that it

9  would introduce, and then I'm going to ask you if you agree

10 with it.  I've had Ms. Siegmann before, and she speaks very

11 quickly, so --

12     MS. SIEGMANN:  I'm going to slow down, your Honor,

13 today.  If the defendant went to trial, the government would

14 prove beyond a reasonable doubt the following:  For several

15 years beginning in or about 2007 and continuing until his

16 arrest in May, 2012, the defendant did willfully conspire and

17 agree with Steven Yao, Xiao Lu, Candy Meng, Wang Ping and

18 others, in the People's Republic of China, to cause the export

19 of U.S.-manufactured pressure transducers, in violation of the

20 Export Administration Regulations, Executive Order 13222, and

21 the International Emergency Economic Powers Act.

22     The government would also prove that the defendant

23 willfully joined in this agreement, and that he and his

24 conspirators committed overt acts during the period of the

25 charged conspiracy in an effort to further the purpose of the

1   conspiracy.

2        The government's evidence at trial would demonstrate

3   that the defendant worked at the Shanghai sales office of MKS

4   Instruments, Incorporated.  MKS is headquartered in Andover,

5   Massachusetts, and manufactures and sells several different

6   models of pressure transducers.  Pressure transducers have a

7   wide variety of commercial applications.  Many MKS pressure

8   transducers, however, can be used in gas centrifuges to enrich

9   uranium, including Model Nos. 622B, 623B, 626B, 626A, 627B,

10  722A, and 722B.

11        Because these pressure transducers are critical to the

12  development of weapons-grade uranium, they are controlled by

13  the Department of Commerce for nuclear proliferation reasons.

14  Accordingly, these pressure transducers cannot be exported to

15  the People's Republic of China without first obtaining an

16  export license from the Department of Commerce.

17        Hu was the sales manager, the defendant, at MKS's

18  Shanghai office from 2008 to May, 2012.  The defendant's

19  employment gave him access to MKS's export-restricted pressure

20  transducers.  The defendant knew that many of MKS's pressure

21  transducers were controlled for export under U.S. export laws

22  and required export licenses to export them to China.  To

23  circumvent this export licensing requirement, the defendant and

24  his conspirators in China created an illegal scheme for selling

25  pressure transducers to unauthorized end users in China and

1    elsewhere.  The scheme involved sending false end-user and

2    end-use information to personnel at MKS's U.S. facility,

3    knowing that MKS would then unwittingly pass on the false

4    information to the Department of Commerce to get an export

5    license.  Sometimes Hu and his conspirators falsely identified

6    the end users for the fraudulently obtained pressure

7    transducers as legitimate businesses in China for whom they had

8    obtained business licenses, while other times --

9          THE COURT:  Who were they really?

10         MS. SIEGMANN:  They were actually legitimate

11   businesses in China that they had obtained business licenses

12   from because they had some business relationship, and then they

13   would apply for licenses in those business's name without them

14   even knowing that they were applying for the export licenses.

15   And the other way that they obtained the false licenses was by

16   using one of the conspirators, Wang Ping, his company name,

17   which was Shanghai Racy System Integration Company Limited.

18   Wang Ping and his company, Racy System, was also used to

19   deliver the parts to the actual end users, who were never made

20   known to the government of the United States.

21         During the course of the conspiracy, the defendant and

22   his conspirators exchanged numerous e-mails about how they

23   would illegally obtain MKS pressure transducers, provide false

24   end-use information to MKS employees located in the United

25   States, use export licenses issued to legitimate businesses to

1    evade U.S. export laws, and arrange for the delivery of the

2    illegally obtained pressure transducers through Wang's front

3    company, Racy System.

4         As a result of this conspiracy and the illegal

5    activities of the defendant and his conspirators, thousands of

6    export-controlled MKS pressure transducers worth millions of

7    dollars were exported from the United States and delivered to

8    unknown and unauthorized end users in the People's Republic of

9    China and elsewhere.

10        THE COURT:  Do you disagree with anything the

11   government just stated?

12        THE INTERPRETER:  Agree or disagree?

13        THE COURT:  Agree, do you agree with what the

14   government said?

15        (Discussion between defense counsel and the

16   defendant.)

17        THE DEFENDANT:  I agree.

18        THE COURT:  So were you involved in a conspiracy to

19   commit export violations?

20        THE DEFENDANT:  Yes.

21        THE COURT:  And I'm not going to reread this long

22   indictment because it was interpreted for you.  Is that right?

23        THE DEFENDANT:  Yes.

24        THE COURT:  So do you plead guilty to from a date

25   unknown to the grand jury but no later than in March, 2007, and

1    continuing thereafter until the present, that you did knowingly

2    and willfully conspire, combine, confederate and agree -- I'm

3    going to have Mary Ellen just give you a copy of the

4    indictment.  It might be easier.  Why don't you just read

5    Count 1 on Page 7.

6         MS. SIEGMANN:  Including the overt acts, your Honor,

7    or just --

8         THE COURT:  No, just until the overt acts.

9         MS. SIEGMANN:  Oh.

10        THE COURT:  Can you translate just that main paragraph

11   until you get to overt acts.

12        THE INTERPRETER:  Yes.

13        (Discussion between the Interpreter and defendant.)

14        THE COURT:  Is there an issue here?

15        THE DEFENDANT:  Understand.

16        MR. MILLIGAN:  Your Honor, I would just clarify for

17   the record, because it seems to be disturbing my client, that

18   he was hired in October of 2008.  The conspiracy may have

19   lasted longer and is the subject of the indictment, but he

20   became an employee and ostensibly joined the conspiracy much

21   after that date.

22        THE COURT:  Okay, so do you plead guilty to so much of

23   it as began in October, 2008?

24        THE DEFENDANT:  Yes.

25        THE COURT:  All right, and do you plead guilty to

1    committing all the overt acts charged in the indictment?

2              THE DEFENDANT:  Yes.

3              THE COURT:  All right.  And you've gone through those,

4    each one of them with your client?

5              MR. MILLIGAN:  We have, your Honor.

6              THE COURT:  So do you plead guilty knowingly, freely,

7    and voluntarily?

8              THE INTERPRETER:  I'm sorry?

9              THE COURT:  Do you plead guilty knowingly, freely, and

10   voluntarily?

11             THE DEFENDANT:  Yes.

12             THE COURT:  I find your plea is knowing and voluntary,

13   supported by an independent basis in fact concerning each of

14   the essential elements, and I accept it.

15             Do we have a sentencing date here?  It's in January?

16             MS. SIEGMANN:  Yes, your Honor.

17             THE COURT:  ████████████████████████  And

18   how long do you think you might need?

19             MS. SIEGMANN:  For the sentencing hearing, your Honor,

20   or to --

21             THE COURT:  You know, I'm trying to remember because

22   we did so many of these pleas today.  Did we state the maximum

23   and minimum penalties?

24             MS. SIEGMANN:  No, we didn't.  It's in the plea

25   agreement, but actually 20 years is the maximum, 20 years

1   imprisonment, a $1 million fine, three years supervised

2   release, and a $100 special assessment.

3          THE COURT:  All right, do you still want to plead

4   guilty knowing those penalties?

5          THE DEFENDANT:  I understand.

6          THE COURT:  Okay, so let me just say this:  What do

7   you think the tentative Guideline range is?

8          MS. SIEGMANN:  Actually, Level 30 is what the

9   government believes it is, which 26 is the base offense level,

10  plus four for his role in the offense.  That is not agreed to.

11  The role in the offense is actually something that will be

12  disputed and will need to be resolved by you at the sentencing

13  hearing, but if it's Level 30, it's 97 to 121 months, your

14  Honor.

15         THE COURT:  All right.  So that's a disputed issue on

16  role, so what's going to have to happen is evidence, right?

17         MS. SIEGMANN:  Well, I believe that the parties, the

18  government will put in its statement of relevant conduct.

19  Obviously then they can object to what -- but I don't know that

20  we'll need to have an evidentiary hearing.  I think the parties

21  will agree for the most part about the facts and have you

22  decide based upon the facts whether he should get a

23  role-in-the-offense enhancement or not.

24         THE COURT:  I've been there before.

25         MS. SIEGMANN:  Yes, your Honor.

1    THE COURT:  It's often easier for you to argue from

2    than for me to understand, but you bear the burden.  So

3    assuming there's no evidentiary hearing, would an hour be

4    enough time?

5    MS. SIEGMANN:  For the sentencing hearing?  I think an

6    hour would be sufficient.

7    MR. MILLIGAN:  Yes, your Honor.

8    MS. SIEGMANN:  And if there is, I mean, evidence --

9    THE COURT:  To what extent is this local company

10   implicated?

11   MS. SIEGMANN:  They were not aware of the conduct at

12   issue, the illegal conduct and the illegal scheme.  They

13   cooperated, as indicated in a press release when the arrest

14   occurred.  They have been cooperating in the investigation, and

15   we don't believe the MKS was involved in the illegal activity.

16   They have now since changed their activities and the way

17   business is done in Shanghai.

18   THE COURT:  All right.  So at this point there are, I

19   guess, not really many legal issues other than the allegation

20   of supervisory?  Is that it?

21   MS. SIEGMANN:  I'm sorry, the --

22   THE COURT:  Plus four, was it?

23   MS. SIEGMANN:  Oh, yes, the plus four, that's the only

24   legal issue that I am aware of, your Honor, at this point.  The

25   parties agree that the base level is 26, so then the question

1   is just whether he gets a role-in-the-offense enhancement based

2   upon his supervisory role in the scheme.

3          THE COURT:  And how long has he been in custody?

4          MS. SIEGMANN:  Since May, 2012, when he was arrested.

5          THE COURT:  All right.

6          MS. SIEGMANN:  He came over from China, and at that

7   point he was --

8          THE COURT:  He has no family, nothing here, right?

9   Everything is over in China?

10         MS. SIEGMANN:  He has some relatives in California?

11  And that's about it, yes.  And the only other issue that the

12  government has is, we'd like a one-week extension to draft our

13  statement of relevant conduct because I don't have much support

14  staff right now, your Honor, due to the shutdown.

15         THE COURT:  Well, I don't have a problem with it.  The

16  key here is, though, you can't back Probation up because --

17         MS. SIEGMANN:  Yes, your Honor, so I was looking just

18  for November 6, which is --

19         THE COURT:  I don't have a problem with that, but you

20  just need to talk it through with them because they may be

21  strapped too.  So if it ends up moving a week or two, then it

22  does.

23         MS. SIEGMANN:  I will be sure to coordinate with them,

24  your Honor.

25         THE COURT:  Thank you.

1          MS. SIEGMANN:  Thank you.

2          THE CLERK:  All rise.

3          MR. MILLIGAN:  Thank you, your Honor.

4          (Adjourned, 2:52 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2


3
   UNITED STATES DISTRICT COURT )
4  DISTRICT OF MASSACHUSETTS    ) ss.
   CITY OF BOSTON               )
5

6


7          I, Lee A. Marzilli, Official Federal Court Reporter,

8  do hereby certify that the foregoing transcript, Pages 1

9  through 19 inclusive, was recorded by me stenographically at

10 the time and place aforesaid in Criminal No. 12-10188-PBS,

11 United States of America v. Qiang Hu, and thereafter by me

12 reduced to typewriting and is a true and accurate record of the

13 proceedings.

14     Dated this 11th day of November, 2013.

15

16

17

18

19
                   /s/ Lee A. Marzilli
20                 _____
                   LEE A. MARZILLI, CRR
21                 OFFICIAL COURT REPORTER

22

23

24

25